IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                             **Criminal Action No. 3:07CR91**
                                                     **JUDGE BAILEY**

**AARON JACKSON,**

    **Defendant.**

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING
THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS [30]**

## I. INTRODUCTION

On February 4, 2009, came the United States of America by Paul Camilletti, Assistant United States Attorney, and also came the Defendant, Aaron Jackson, in person and by his counsel, Kirk Bottner, for an evidentiary hearing in the above-styled criminal action. This is a Report and Recommendation on Defendant's Motion to Suppress [30]. A separate order has been entered on Defendant's Motion for Disclosure of Information Pertaining to Witnesses [29], Defendant's Motion for Bill of Particulars [31] and Defendant's Motion for Disclosure of Identity of Witness [34].

At the commencement of this hearing, the Court inquired as to whether the Motion to Suppress was being filed pursuant to Rule 403 of the Federal Rules of Evidence or whether it was being filed as a challenge to a search and seizure under the Fourth Amendment. Counsel for the Defendant indicated for the purposes of this hearing that Defendant was asserting that the search and seizure were illegal under the Fourth Amendment and should be suppressed on those grounds. The Court stated that a Report and Recommendation would be submitted to the District Court on the

Fourth Amendment issue only. The Defendant is granted leave to file a Motion in limine if he chooses to pursue the Rule 403 Motion any further in this matter.

## II. PROPOSED BACKGROUND AND SUMMARY OF TESTIMONY

**1.** On November 14, 2007, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted the Defendant on two (2) counts.

**2.** The charges in the November 14, 2007 indictment against the Defendant are as follows:

Count One (1) - Convicted Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1) and §924(a)(2);

Count Two (2) - Possession of Stolen Firearms in violation of 21 U.S.C. §922(j) and §924(a)(2)

**3.** On January 21, 2009, the Defendant filed a Motion to Suppress [30] and various other motions.

**4.** On February 4, 2009, the Court held an evidentiary hearing on Defendant's motions. The Government called Magistrate Randy Smith, Deputy Wolf, and ATF Agent Richard Dean to testify. Defense counsel cross-examined these witnesses at length and also called the Defendant, Aaron Jackson and his girlfriend, Ayriel Jones to testify.

**5.** A summary of the factual assertions contained in the Government's Response and from the Government's witnesses' testimony at the hearing are as follows:

    **a.** On September 28, 2007, Berkeley County Sheriff Department Deputies, Wolf and Clarke, along with then Sheriff Smith and then Chief Deputy Lemaster, responded to 55 Lanee Way, Apartment 1 in reference to a complaint of death threats. The police had been contacted by a neighbor stating that a person in that apartment had

been receiving death threats. After speaking with the neighbor, the officers knocked on the apartment door to further their investigation of this report. The Defendant, Aaron Jackson, voluntarily opened the door and permitted the officers to enter the home. Deputy Wolf testified that he immediately recognized Defendant Jackson from the time period when the Deputy worked as a correctional officer at the Eastern Regional Jail. Once inside, then Sheriff Randy Smith asked Defendant Jackson about the death threats that he or his girlfriend had been receiving. During this inquiry, Deputy Wolf asked if their were any firearms at the residence. The Defendant replied no and the Deputy Wolf asked if the officers could look around. The Defendant consented. Towards the end of the officers search, Deputy Wolf asked the Defendant again whether there were any firearms at the residence. This time the Defendant Jackson advised that there was one in the ceiling and indicated where it was. He admitted to the officers that he had purchased it for his protection and it was "hot." Deputy Wolf retrieved the firearm from the ceiling.

b. Several days later, Lt. Gary Harmison and ATF Agent, Rich Dean interviewed Jackson. Prior to the interview Defendant Jackson signed a form waiving his right to have an attorney present. ATF Agent Dean asked the Defendant about the firearm. Jackson stated that he had purchased the firearm a day or two prior to his arrest. Jackson stated he needed the firearm for protection since people on the streets thought he was working for the police, and his girlfriend, Ayriel Jones, had received threatening phone calls. Jackson advised that he purchased the firearm from "Hustle Man" for $100.00 in the middle of the day near the intersection of Race Street and

Maple Avenue in Martinsburg. The Defendant Jackson further informed ATF Agent Dean that the ammunition was purchased with the firearm and "Hustle Man" carried the firearm in the front of his waistband prior to selling it to Jackson. There was no written statement taken from the Defendant.

6. A summary of the factual assertions contained in Defendant's Motion and made by Defendant's witnesses' at the hearing are as follows:

   **a**. The Defendant testified that he works out of the area and was just visiting his girlfriend at her apartment on the day in question, September 28, 2007. He had just arrived at the apartment and was getting ready to take a shower when he heard a knock at the door. Defendant testified that when he answered the door the officers pushed their way past him. He asserts that he did not invite them to enter the apartment. However, he did admit that he recognized Deputy Wolf from his time at the Eastern Regional Jail. Once the officers were inside the apartment, Defendant alleges that Sheriff Randy Smith questioned him about the "death threats" that his girlfriend had been receiving and the other officers just started looking around without his permission. In response to Sheriff Smiths questioning, Defendant described the "death threats" as merely prank calls where a person disguises his voice and says something like, "I am going to kill you." The Defendant further testified that he did not point to the ceiling nor did he tell Deputy Wolf that there was a gun in the ceiling of the apartment. In fact, the Defendant testified that he didn't even know there was a gun there until the police found it. Further, Defendant asserts that he did not tell the officer that the gun was "hot." Defendant testified that his

girlfriend found the gun while she was cleaning out the wood stove in her apartment. The girlfriend, Ayriel Jones, put the gun and ammunition in the ceiling so the children she babysits couldn't get to them. The Defendant also testified that he never asked the officers to leave nor did he ask them to stop searching the apartment Defendant also indicated in his testimony that he and Ayriel Jones were no longer in a relationship.

**b**.   The Defendant's girlfriend, Ayriel Jones, testified that she and the Defendant started dating in August of 2005 and were still together at the time of this hearing. She further testified that she found the gun and ammunition in the wood stove while cleaning it out. She stuck the gun and ammunition in the ceiling to keep it away from the children that she babysat and in case she ever needed it. Ms. Jones did not arrive on the scene until after the gun had been found. She testified that when she arrived the Defendant was sitting at the table with the officers. She also testified that the house was a mess and that there were more than four officers present.

### III.      RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### 1.      RECOMMENDED FINDINGS OF FACT

The following findings of fact are based on the written Motion and Response filed in this case and on the testimony of the witnesses during the evidentiary hearing. The Court weighed the credibility of the witnesses based on their testimony in court.

1. On September 28, 2007, Berkeley County Sheriff Deputies, Wolf and Clark, along with then Sheriff Smith and then Chief Deputy Lemaster, responded to 55 Lanee Way, Apartment 1, in

reference to a complaint of death threats.

2. The officers knocked on that apartment door and Defendant Jackson opened it. Either Defendant Jackson invited the officers to enter the apartment or it was inferred from Defendant Jackson's actions that he was allowing them to enter into the apartment. Deputy Wolf and Defendant Jackson knew each other from when Deputy Wolf worked as a correctional officer at the Eastern Regional Jail.

3. Once in the apartment, then Sheriff Randy Smith questioned the Defendant regarding the alleged "death threats." Defendant responded that his girlfriend was receiving prank calls where someone was using a disguised voice and saying things like "I am going to kill you." During this exchange, Deputy Wolf asked if there were any firearms in the apartment. The Defendant responded no.

4. At the premises and while investigating the complaint, the police were entitled to make a protective sweep in order to insure officer's safety. However in this instance, Deputy Wolf asked the Defendant if he could look around the apartment. With the Defendant's consent, the officers searched the apartment. Defendant admitted that he never asked the officers to leave or stop searching the apartment. Before finishing the search, Deputy Wolf asked the Defendant a second time, if there were any firearms present in the apartment. At that time, the Defendant indicated that there was a gun in the ceiling.

5. Deputy Wolf then retrieved the gun from the ceiling.

## 2. RECOMMENDED CONCLUSIONS OF LAW

The officers appearance at the apartment and knocking at the door in response to a complaint requesting police assistance did not violate Defendant's Fourth Amendment rights. *United States v. Cephas,* 254 F.3rd 488, 493-94 (4th cir. 2001) . The defendant's act of opening the door and

admitting the officers was voluntary.

After entering the apartment, the police were entitled to make a protective sweep of the apartment in order to insure the officers safety. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). *Cephas, supra.* However, Deputy Wolf also asked the Defendant Jackson if the officers could look around the apartment and the Defendant consented to the search. The Fourth Circuit has recognized that consent is a "well-recognized" exception to the warrant requirement. *United States v. Hylton,* 349 F3d 781 (4th Cir. 2003) Moreover, consent may be inferred from words, actions or both. *Id.* p. 786

> The voluntariness of a defendant's consent to a search is a factual question determined in light of the totality of the circumstances and should be upheld unless clearly erroneous. *United States v. Peterson*, 524 F.2d 167 (4th Cir. 1975) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041 (1973)). Moreover, the government need not demonstrate that the defendant knew of the right to refuse to consent for the search to be deemed a voluntary one. *Schneckloth*, 412 U.S. at 248-49, 93 S. Ct. at 2058-59.

*U.S. v. Gordon*, 895 F.2d 932 (4th Cir. 1990).

Based on the totality of the circumstances of the evidence presented, the court concludes that on September 28, 2007, the Defendant consented to the search of the apartment. The Defendant was present during the search and by his own admission did not ask the officers to stop searching or to leave at any time during the search. Toward the end of the search, the Defendant indicated in some manner that there was a gun hidden in the ceiling that was "hot". Both the search and seizure were consensual and therefore constitutional.

The undersigned Magistrate Judge recommends that the District Court **DENY** Defendant's Motion to Suppress [30].

### IV. DECISION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **DENY**

Defendant's Motion to Suppress [30]. The Court notes the Defendant's objection to the ruling.

Within ten (10) days of receipt of service of this Report and Recommendation, any party who appears *pro se* and any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the Honorable John P. Bailey. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: February 9, 2009**

*/s/ David J. Joel*
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE