**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**UNITED STATES OF AMERICA,**

    Plaintiff,

**v.**                                                                              **CRIMINAL NO. 3:07-CR-91
(Judge Bailey)**

**AARON EMANUEL JACKSON,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

I.    <u>Introduction</u>

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge David J. Joel. By Standing Order, this action was referred to Magistrate Judge Joel for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Joel filed his R & R on February 9, 2009 [Doc. 68]. In that filing, the magistrate judge recommended that this Court deny the Defendant's Motion to Suppress Evidence [Doc. 30].

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo*

1

review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984).

The defendant's objections were due on or before February 12, 2009. Noting that no objections had been filed on February 13, this Court contacted Mr. Bottner's office. Mr. Bottner's office represented to the Court that he had had the opportunity to review the evidentiary hearing transcript as well as the R&R and that he did not have any objections to the same. Accordingly, this Court will review the R&R for clear error.

This Court has reviewed the motion to suppress [Doc. 30], the Government's response [Doc. 40], the magistrate judge's R&R [Doc. 68], defendant's objections thereto [Doc. ], and the transcript from the February 4, 2009, evidentiary hearing. Accordingly, this Court is now adequately prepared to make its final ruling on this matter.

II.  Factual and Procedural Background

On November 14, 2007, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted the defendant on two (2) counts: Count 1, Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2); and Count 2, Possession of Stolen Firearms in violation of 21 U.S.C. § 922(j) and § 924(a)(2).

On January 21, 2009, the defendant filed a Motion to Suppress [30] and various other motions. On February 4, 2009, Magistrate Judge David J. Joel held an evidentiary hearing on defendant's motion to suppress.

The Government called Magistrate Randy Smith, Deputy Wolf, and ATF Agent Richard Dean to testify. Defense counsel cross-examined these witnesses at length and

also called the defendant, Aaron Jackson, and his girlfriend, Ayriel Jones, to testify.

Having reviewed the materials pertinent to this matter and having weighed the credibility of the witnesses based on their testimony in open Court, this Court finds the following to be the facts in this case.

1. On September 28, 2007, Berkeley County Sheriff Deputies, Wolf and Clark, along with then Sheriff Randy Smith and then Chief Deputy Lemaster, responded to 55 Lanee Way, Apartment 1, in reference to a complaint of death threats.

2. The officers knocked on the apartment door and the defendant, Aaron Jackson, opened it. Either Defendant Jackson invited the officers to enter the apartment or it was inferred from his actions that he was allowing them to enter the apartment. Deputy Wolf and Defendant Jackson knew each other from when Deputy Wolf worked as a corrections officer at the Eastern Regional Jail.

3. Once in the apartment, then Sheriff Randy Smith questioned the defendant regarding the alleged "death threats." The defendant responded that his girlfriend was receiving "prank calls," the context of which was described as someone using a disguised voice who threatened "I am going to kill you." During this exchange, Deputy Wolf asked if there were any firearms in the apartment; the defendant responded in the negative.

4. While investigating the complaint at the apartment, the police made a protective sweep in order to insure the officers' safety. Additionally, Deputy Wolf asked the defendant if he could look around the apartment. With either the Defendant's consent or lack of objection, the officers searched the apartment. The defendant admitted that he never asked the officers to leave or stop searching the apartment. Before finishing the search, Deputy Wolf asked the defendant a second time if there were any firearms in the

apartment. At that time, the defendant indicated that there was a gun in the ceiling.

5. Deputy Wolf retrieved the Ruger Blackhawk .357 caliber gun from within the ceiling.

6. It was later the defendant's contention that he was not aware of the gun being in the apartment and that his girlfriend had found it in a wood stove a couple weeks prior to the defendant's arrest. His girlfriend, Ayriel Jones, further stated that it was her belief that her old roommates from 2004-2005 had stashed the gun in the stove some time before they were evicted. She claimed she had never cleaned the stove until discovering the firearm. Therefore, it was her testimony that it had remained in the stove for since sometime prior to 2005.

7. However, Special Agent Richard Dean of the ATF testified that this firearm had been reported stolen during a burglary case he worked the summer of 2007. Agent Dean also testified the defendant told him he purchased the firearm and ammunition for $100 from a man he knew as "Hustle Man" whom he met through an undisclosed family member.

III.  Legal Standard

A police officer's appearance at a person's residence in response to a complaint by that resident requesting police assistance does not violate any Fourth Amendment rights. **United States v. Cephas**, 254 F.3d 488, 493-94 (4th Cir. 2001).

Further, the Fourth Circuit has recognized that consent is a "well-recognized" exception to the warrant requirement. **United States v. Hylton**, 349 F.3d 781 (4th Cir. 2003). Moreover, consent may be inferred from words, actions, or both. *Id*. at 786.

More specifically, the Fourth Circuit Court of Appeals has held that "[t]he

voluntariness of a defendant's consent to a search is a factual question determined in light of the totality of the circumstances and should be upheld unless clearly erroneous. **United States v. Peterson**, 524 F.2d 167 (4th Cir. 1975) (citing **Schneckloth v. Bustamonte**, 412 U.S. 218, 93 S. Ct. 2041 (1973)). Moreover, the Government need not demonstrate that the defendant knew of his right to refuse to consent for the search to be deemed a voluntary one. **Schneckloth**, 412 U.S. at 248-49, 93 S. Ct. at 2058-59." **U.S. v. Gordon**, 895 F.2d 932 (4th Cir. 1990).

Additionally, once inside, police are entitled to make a protective sweep of a residence in order to insure the officers' safety. **Maryland v. Buie**, 494 U.S. 325, 334 (1990). **Cephas**, *supra*.

V.  Discussion

This Court agrees with the findings of the magistrate judge that, based on the totality of the circumstances of the evidence presented, the defendant either explicitly or implicitly consented to the September 28, 2007, search of the apartment. When the police responded to the complaint of death threats, they knocked on the defendant's door, which was clearly not any violation of his Fourth Amendment rights. *See* **Cephas**, at 493-94.

Then, when the defendant opened the door he allowed the officers in; whether it was explicitly stated or conveyed by his actions was unclear. This Court is convinced either way that consent was in fact given. This is further bolstered by the fact that the defendant was present during the search, and by his own admission did not ask the officers to stop searching or to leave at any time. And although the police did not have a warrant, consent is a "well-recognized" exception to the warrant requirement. **United States v. Hylton**, 349

5

F.3d 781.

Then, once inside, police exercised their entitlement to perform a protective sweep to insure their own safety. See **Maryland v. Buie**, 494 U.S. 325, 334 (1990). **Cephas**, *supra*. Further, Deputy Wolf also asked the defendant if the officers could look around the apartment, and the defendant consented to the continuation of the search.

Toward the end of the search, the defendant indicated in some manner that there was a gun hidden in the ceiling and that it was "hot," or stolen. Based on the information volunteered by the defendant, Deputy Wolf then seized the Ruger Blackhawk .357 caliber gun from within the ceiling. Accordingly, based on this evidence elicited from the hearing, this Court is of the opinion that both the search and seizure were consensual and, therefore, constitutional. As such, the evidence shall be admissible at trial.

VI.  Conclusion

Upon careful review of the above, it is the opinion of this Court that the magistrate judge's report and recommendation **[Doc. 68]** should be, and is, hereby **ORDERED ADOPTED** for the reasons stated herein and for those stated in the magistrate judge's report. Accordingly, the Defendant's Motion to Suppress Evidence **[Doc. 30]** is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February 16, 2009.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE